# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:04CR00009 |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **TRADON MARQUEZ DRAYTON**, ) | By: James P. Jones |
| ) | Chief United States District Judge |
| Defendant. ) | |

*John E. Jessee and Daniel K. Read, Jessee, Read & Ely, P.C., Abingdon, Virginia, for Defendant.*

In this concluded criminal case, I hold that the fees awarded court-appointed counsel are to be governed by the capital case standards, even though the government did not actually seek the death penalty.

Tradon Marquez Drayton was convicted by a jury in this court of certain drug trafficking offenses, as well as a violation of the so-called drive-by shooting statute, 18 U.S.C.A. § 36 (West 2000), and the crime of using a firearm in the course of a drug trafficking crime and causing the death of another, 18 U.S.C.A. §§ 924(c), (j) (West 2000 & Supp. 2006). While certain of these crimes had the potential punishment of death, *see* 18 U.S.C.A. §§ 36(b)(2)(A), 924(j)(1), the government

never sought the death penalty in the case and after trial and conviction, Drayton was sentenced to 548 months imprisonment.[1]

Drayton's court-appointed attorneys have now submitted fee vouchers for approval by the court and a question has arisen as to whether the hourly rate and fee maximums applicable to noncapital cases apply. For noncapital cases, there is a maximum allowable hourly rate for appointed counsel and a cap of $7,000 that such an attorney may receive, unless the excess is approved by the chief judge of the circuit. *See* 18 U.S.C.A § 3006A(d)(1) & (2) (West 2000 & Supp. 2006).

In capital cases, the maximum allowable hourly rate is higher and there is no maximum amount of compensation an appointed attorney may receive for work on the case. *See* 18 U.S.C.A. § 3599(g) (West Supp. 2006).[2] After a review of the relevant statutes and Fourth Circuit authority, I hold that the capital case standards must be applied in the present case.

---

[1] The government contended that the defendant ambushed a vehicle containing rival drug dealers and in the ensuing gun battle one of the rivals was accidently shot and killed by one of his own men. The jury was instructed that they could find the defendant guilty of first degree murder under these facts. *See* 18 U.S.C.A. § 1111(a) (West Supp. 2006) (defining first degree murder to include a killing "perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed"). In fact, however, the jury found the defendant guilty of voluntary manslaughter.

[2] The current capital case maximum rate is $163 per hour and the current noncapital maximum rate is $92 per hour. These rates are subject to adjustment by the United States Judicial Conference under certain statutory conditions. *See* 18 U.S.C.A. §§ 3006A(d)(1), 3599(g)(1).

-2-

The statute at issue reads in pertinent part as follows:

[I]n every criminal action in which a defendant is charged with a crime *which may be punishable by death*, a defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services at any time . . . shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with subsections (b) and through (f).

18 U.S.C.A. § 3599(a)(2) (West Supp. 2006) (emphasis added).[3]

The triggering event for application of § 3599 is being "charged with a crime which may be punishable by death." The question is whether § 3599 applies in any case where the death penalty could be imposed because the enabling statute defines the offense as a capital crime, or only in cases where the government actually seeks the death penalty.

Following the reasoning employed by the Fourth Circuit in interpreting 18 U.S.C.A. § 3500 (West 2000), a related statute, the fee allowances for capital cases must be applied in this instance. In *United States v. Boone*, 245 F.3d 352, 359 (4th Cir. 2001), the court held that the phrase "[w]hoever is indicted for . . . [a] capital crime" in § 3500, plainly indicated two attorneys must be provided, where requested, to any defendant indicted for a capital crime, regardless of whether the government

---

[3] This provision was recently moved from 21 U.S.C.A. § 848(q)(4)(A) (West 1999). *See* USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. 109-177, § 222(a), 120 Stat. 192, 232 (2006).

-3-

seeks the death penalty for that crime. Although several of its sister circuits found Congress only intended additional counsel be provided where the government actually seeks the death penalty, the Fourth Circuit adhered to the statute's plain meaning.[4]

The necessary starting point in any exercise of statutory interpretation is the plain language of the statute. Where the language of the statute has a plain and ordinary meaning, a court need not look any further and should apply the statute as it is written. *Comm'r v. Soliman*, 506 U.S. 168, 174 (1993). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341 (1997).

The capital case fee allowances of § 3599 are triggered when "a defendant is charged with a crime which may be punishable by death." 18 U.S.C.A. § 3599(a)(2). A charge is "a formal accusation of a crime as a preliminary step to prosecution." *Black's Law Dictionary* 227 (7th ed. 1999).

---

[4] Judiciary policy provides that in a capital case if it is determined that the government will not seek the death penalty, the court may reconsider the number of counsel. 7 Admin. Office of the U. S. Courts, *Guide to Judiciary Policies and Procedures*, pt. A, ch. VI, § 6.02(B)(2) (2006). As I have explained, however, existing Fourth Circuit authority is to the contrary. In the present case, the defendant requested the appointment of two attorneys.

-4-

Here, Drayton was charged under 18 U.S.C.A. § 36(b)(2)(A), which provides that any person who fires a weapon in furtherance of a drug offense into a group of two or more persons resulting in the death of any person in that group shall be "punished by death or imprisonment for any term of years or for life." 18 U.S.C. § 36(b)(2)(A). Drayton was also charged under 18 U.S.C.A. § 924(j), which provides that any person who causes the death of a person through the use of a firearm during and in relation to a crime of violence or a drug trafficking crime shall be "punished by death or by imprisonment for any term of years or for life." 18 U.S.C.A § 924(j)(1). Because the maximum penalty available under §§ 36(b)(2)(A) and 924(j)(1) is death, the requisite for triggering the fee standards under § 3599 has been met.

Although one could argue that Congress believed the words "charged with a crime which may be punishable by death" meant only crimes where the government actually sought the death penalty, the plain meaning of the term "charged" relates to the broader concept of formally accusing someone of a crime, and not the particular type of punishment—death or imprisonment for a term of years or for life—which the government actually seeks.

Based on the plain meaning of the statute, it is reasonable to believe Congress decided to provide all defendants charged with a capital offense additional resources

-5-

due to the serious nature of the crime.[5] In other contexts, the applicability of statutes relating to capital crimes depends "on the capital nature of the crime, and not on whether the death penalty is in fact available for defendants in a particular case." *United States v. Ealy*, 363 F.3d 292, 295 (4th Cir. 2004) (holding that longer statute of limitations period for capital offenses applied even where death penalty was constitutionally unavailable) (quoting *United States v. Church,* 151 F. Supp. 2d 715, 717 (W.D.Va 2001)). The nature of the offense charged, rather than the actual type of punishment sought, dictates that additional resources be available to defense counsel under § 3599. *See Church*, 151 F. Supp. 2d at 722 ("[F]or purposes of determining the appropriate statute of limitations under 18 U.S.C.A. §§ 3281 and 3282, a court must look to the seriousness of the crime rather than the actual punishment to be received.").

Finally, it would be an oddity for Congress to require the appointment of two attorneys for all crimes where the death penalty is an available punishment under §3500, but then cabin the scope of that representation by imposing the fee cap and lower hourly rate of § 3006A(d)(1) & (2). The same interpretation that the *Boone*

---

[5] Although the term "capital offense" is not used in the text of § 3599, the Fourth Circuit has classified a capital offense as one in which the death penalty may be imposed under the terms of the enabling statute, regardless of whether the death penalty is in fact sought by the government. *See United States v. Watson*, 496 F.2d 1125, 126-27 (4th Cir. 1973).

-6-

court found favoring the appointment of additional counsel, also favors the application of the fee standards in § 3599.

For the foregoing reasons, Drayton's court-appointed attorneys will be compensated based on the fee standards applicable to capital cases.

It is so **ORDERED**.

ENTER: October 31, 2006

/s/ JAMES P. JONES
Chief United States District Judge

-7-

Case 1:04-cr-00009-JPJ   Document 466   Filed 10/31/06   Page 7 of 7   Pageid#: 2095